517 S.E.2d 439

**Arlando GAINES, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

**No. 24956.**

Supreme Court of South Carolina.

Submitted April 21, 1999.

Decided June 21, 1999.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Teresa A. Knox, Assistant Attorney General Matthew M. McGuire, all of Columbia, for petitioner.

Chief Attorney Daniel T. Stacey, of South Carolina, Office of Appellate Defense, of Columbia, for respondent.

TOAL, Justice:

The State has petitioned for a writ of certiorari, contesting the Post–Conviction Relief ("PCR") court's grant of relief to Arlando Gaines ("Defendant") on the grounds that two of his three guilty pleas were not entered "voluntarily." We reverse the PCR court and reinstate Defendant's two guilty pleas.

## FACTUAL/PROCEDURAL BACKGROUND

The State indicted Defendant in November 1994 for two counts of burglary second degree and one count burglary third degree. On November 28, 1994, Defendant pled guilty to all three indictments. Defendant entered a plea of guilty to one count of second degree burglary and entered guilty pleas for the other burglary second charge and the burglary third charge under the case *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).[1] An attorney from the public defender's office, Mark Wise, acted as Defendant's attorney at the hearing. Defendant did not directly appeal any of his convictions.

At the hearing, the trial judge made several inquires regarding the guilty pleas including:

(1) Whether Wise had explained the charges to Defendant;

(2) Whether Wise believed Defendant understood the charges pending against him;

(3) Whether Defendant understood the amount of time he could be sentenced to serve as a result of the charges;

(4) Whether Defendant had been promised anything besides the Solicitor's sentencing recommendation for his pleas;

(5) Whether Defendant understood he had the right to have a jury trial and could present witnesses and have his attorney cross-examine the State's witnesses;

(6) Whether Defendant understood he did not have to testify at trial and his silence could not be held against him by the jury;

(7) Whether Defendant had any complaints about the police officers or prosecutors in the case;

(8) Whether Defendant was satisfied with the services of his attorney;

---

1. The United States Supreme Court held in *Alford* that an accused may consent voluntarily, knowingly, and understandingly to the imposition of a prison sentence although unwilling to admit culpability, or even if the guilty plea contains a protestation of innocence, when the accused intelligently concludes that his interests require a guilty plea and the evidence strongly supports his guilt of the offense charged.

(9) Whether Defendant was abusing any substance that would prevent him from understanding the proceedings;

The trial judge explained the concept of an *Alford* plea and again reviewed the amount of time Defendant could receive under the pleas. At the end of this extended colloquy, the following exchange took place between the trial court and Defendant:

THE COURT: Knowing all of this, are you pleading guilty freely and voluntarily?

DEFENDANT: Yes, sir.

The trial court then established a factual basis for each of the pleas. In addressing the factual basis of the non-*Alford* plea, the trial court stated:

THE COURT: All right, Solicitor, I accept the [non-*Alford*] plea ..., I think it is free and voluntary. He has knowingly waived his rights to a jury trial on that one. *And let me hear the facts on the others and I will give you a ruling on that.* (Emphasis added)

The Solicitor then proceeded to give an extended description of the factual basis for the incidents alleged under the *Alford* pleas. The Solicitor also gave a summation of Defendant's extensive criminal history and the trial judge reviewed that history with Defendant in detail. The trial court also heard from Defendant's wife who testified for her husband in hopes of reducing his sentence. At the conclusion of the wife's testimony, the trial court sentenced Defendant to ten years in prison plus five years probation.

In December 1995, Defendant filed an application for PCR alleging: (1) ineffective assistance of counsel; and (2) prejudicial error on behalf of the prosecution. The PCR judge heard oral arguments and on February 16, 1997, issued an order granting relief to Defendant on the two *Alford* guilty pleas. The PCR judge determined that Defendant was not entitled to relief as a result of ineffective assistance of counsel. However, the PCR judge found that the trial judge failed to make the specific finding of voluntariness following the factual descriptions of the *Alford* pleas as he had stated he would. Based on the trial court's failure to state expressly that it found the non-*Alford* pleas voluntary, the PCR court set aside those two guilty pleas. The PCR order upheld Defendant's

guilty plea entered on the other second degree burglary charge.

## LAW/ANALYSIS

The State argues that the PCR judge erred in finding the two *Alford* pleas were involuntary. We agree.

 "If the record reflects, as it does here, that the trial court has assured itself that the plea was voluntary and intelligently entered with full knowledge of the nature of the offense, then lack of precise language in the record expressing these considerations is not of itself a valid reason for reversal." *State v. Lambert*, 266 S.C. 574, 580, 225 S.E.2d 340, 342 (1976). In the current case, the trial judge satisfied all of the necessary elements to establish the *Alford* guilty pleas as voluntary. The PCR judge relied on the trial judge's statement that he would make an express finding as to the voluntariness of the *Alford* pleas and then failed to do so as the sole reason for setting aside those guilty pleas.

 The test for a valid guilty plea established by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) is whether the record establishes that a guilty plea was voluntarily and understandingly made. Generally, "the [court] must be certain that the defendant understands the charge and the consequences of the plea and that the record indicates a factual basis for the plea." In *State v. Armstrong*, 263 S.C. 594, 211 S.E.2d 889 (1975), this Court also acknowledged that the "court's warning should include an explanation of the defendant's waiver of constitutional rights and a realistic picture of all sentencing possibilities." *Id.* at 598, 211 S.E.2d at 891. To ensure that the defendant understands, the trial judge usually questions the defendant about the facts surrounding the crime and the punishment which could be imposed. *See, e.g., State v. Lambert*, 266 S.C. 574, 225 S.E.2d 340 (1976). It is clear from the record that the trial judge met all requirements to enter a valid guilty plea, even if he did not follow through with his promise to explicitly rule on their voluntariness.

The trial judge satisfied all of the necessary requirements when he accepted the two *Alford* pleas from Defendant. A review of the record shows that the judge questioned Defen-

dant extensively about the voluntariness of both the non-*Alford* and *Alford* pleas. The judge discussed the possible sentences under all the charges and made no distinction between them until he established the factual basis for each plea. Following the factual basis for both the non-*Alford* and *Alford* pleas, the trial judge sentenced Defendant for all three charges. The clear implication is that the trial judge found the pleas voluntary or he would not have entered sentences for all three offenses. That the judge failed to state expressly his finding as to the voluntariness of the *Alford* pleas does not defeat the fact that the record itself reveals a voluntary waiver.

### CONCLUSION

The order of the PCR court is **REVERSED** and Defendant's two *Alford* pleas are reinstated.

FINNEY, C.J., MOORE, WALLER, and BURNETT, JJ., concur.